**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:10-CV-382**

| | | |
|---|---|---|
| SONIC AUTOMOTIVE, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM AND** |
| _____) | | **ORDER** |
| ROBERT PRICE, CAROLYN PRICE, | ) | |
| MARCUS CAPPELLETTI, KELLY | ) | |
| CAPPELLETTI, MISTY OWENS, | ) | |
| JOSEPH LEE WILLIAMS, JAMES B. | ) | |
| WRIGHT, and VINCENT J. ANSTEY | ) | |
| on behalf of themselves and all other | ) | |
| persons similarly situated, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on a petition to vacate arbitration award on

class certification pursuant to the Federal Arbitration Act, 9 U.S.C. §10(a)(4) ("FAA"), filed by

Petitioner Sonic Automotive, Inc. ("Petitioner") (Doc. 1). Respondents Price, et al,

("Respondents") are individual purchasers of automobiles and associated service contracts from

Petitioner's automobile dealerships, who now seek to proceed in class arbitration over

allegations that Petitioner engaged in unfair and deceptive trade practices. Respondents oppose

the petition to vacate the arbitration award on its merits, (Doc. 24), and have additionally filed a

motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or

alternatively, to dismiss on prudential grounds. (Doc. 18). Respondents also move the Court to

stay the petition to vacate the arbitration award pending resolution of the motion to dismiss.

1

(Doc. 21). Having considered the record, the parties' extensive memoranda, and the applicable federal law, Respondents' Motion to Dismiss will be DENIED, the Motion to Stay is rendered moot, and the Petition to Vacate the Arbitration Award on Class Certification will be GRANTED for the following reasons.

## STATEMENT OF THE CASE

As further described below, the standard of review for vacating an arbitration award is narrow. A reviewing court is not to "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.* 484 U.S. 29, 36 (1987). Consequently, the facts underlying the issues subject to the arbitration proceedings are generally outside the scope of this Court's analysis of the award. Nevertheless, it is useful to provide a complete overview of the relevant facts, allegations and procedure that form the basis of this case.

## A.     The State Court Suits and Entering Arbitration

Petitioner seeks vacatur of the "Partial Final Award on Class Certification" entered in the consolidated arbitration proceeding *Owens, et. Al. v Automobile Protection Corporation et. al.*, AAA Consolidated Case No. 11 188 0114005 (Jul. 19, 2010) (Green, Arb.). Petitioner—a respondent in the arbitration—is an automotive retailer that owns and operates dealership locations across the United States. The company is incorporated in Delaware and maintains its principal place of business in Charlotte, North Carolina, in this judicial district. (Doc. 1 ¶1). Respondents—claimants in the arbitration—are individuals who purchased vehicles packaged

with a product called "ETCH." ETCH consists of a "small number stenciled to one or more vehicle windows" and was marketed as an automobile theft deterrent system. Petitioner describes the ETCH product as "an engraving on a car's windows that is designed to make the windows harder to re-sell, and thus to deter professional car thieves. The product comes with a $2,500 warranty, which is available in the event it fails to deter the theft of a vehicle." (Doc. 3 12 n.2).

The named plaintiffs filed their initial suits, and later proceeded in arbitration, as members of a putative class. Each of the named plaintiffs signed some form of an "Agreement to Arbitrate Certain Issues" with the dealership at the time the ETCH product was purchased concurrent with the sale or lease of an automobile. (Doc. 3 3). Some of these agreements were materially identical, whereas others contained differing terms and clauses. Respondents allege that Petitioner engaged in illegal "packing and stuffing" of ETCH into monthly payment installments for automobiles, misrepresented the purchase of ETCH as a necessary predicate for vehicle financing services, described the product as a "warranty" rather than as insurance—nor regulated it as such, and failed to use a standardized price structure for ETCH's standardized benefits. (Award 4). These allegations comprise the foundation for Respondents' claims for unfair and deceptive trade practices, breach of contract, negligent hiring and supervision, unjust enrichment, and assorted forms of damages and injunctive relief.

The arbitration consolidated two lawsuits that were directed to arbitration pursuant to the parties' arbitration agreements and judicially entered Consent Orders. The first of these suits, styled *Owens et al v. Automobile Protection Corp. et al*. (Civ. No. 04-CP-46-2997) ("*Owens*"),

was filed in the Court of Common Pleas of South Carolina on November 15, 2004. On January 14, 2005, Petitioner moved to compel arbitration in this case pursuant to the arbitration agreements signed by the *Owens* plaintiffs, which require, in pertinent part, arbitration of disputes involving, "[a]lleged unfair trade practices, consumer statutes and regulations, or punitive damages." (Doc. 3 Ex. 4). On February 14, 2005, while the Motion to Compel Arbitration in *Owens* was pending, a second suit, styled *Price et. al. v. Automobile Protection Corp. et al.* (Civ No. 05-CVS-00157) ("*Price*"), was filed in the General Court of Justice, Superior Court Division, Lincoln County, North Carolina.

On March 22, 2005 the parties in *Owens* voluntarily entered into a Consent Order to enter arbitration. (Doc. 3 Ex. 8). On April 18, 2005, the parties in *Price* voluntarily entered into a Consent Order to enter arbitration that is materially identical to that in *Owens*. The Consent Orders, and the powers they convey to the Arbitrator, form an integral part of this review, and it is useful to reproduce the documents' five paragraphs for the record:

> "With the consent of all parties, IT IS ORDERED THAT:
>
> (1) Any and all matters, claims and issues embraced by the Complaint and First Amended Complaint filed in this matter by the Plaintiffs shall be submitted to arbitration before the American Arbitration Association ("AAA").
>
> (2) Pursuant to the AAA Supplementary Rules for Class Arbitration, the arbitrator(s) shall determine (1) whether the applicable arbitration clauses preclude or allow class-wide arbitration; and (2) if the clauses allow class arbitration, whether the arbitration meets the prerequisites for a class arbitration such that the arbitration should proceed as a class arbitration;
>
> (3) Nothing in this stipulation is to be construed as a waiver by any party of any procedural or substantive right afforded to them pursuant to the Rules of the AAA, including but not limited to the Supplementary Rules for Class Arbitration.

(4) Plaintiffs shall file their demand for class arbitration to the AAA within thirty days of the date of entry of this order.

(5) This lawsuit is hereby stayed in its entirety pursuant to the FAA [and applicable state law] until the Plaintiffs have submitted their claims to arbitration and the arbitration proceedings have been completed."

(Doc. 3 Exs. 8, 9).

The suits were stayed pending the arbitration. Pursuant to the Consent Orders, the Plaintiffs in the state suits each filed a Demand for Arbitration with the AAA. The demands were made pursuant to the procedures for initiating an arbitration that *arises from a contractual agreement to arbitrate*. Rule 4(a) of the AAA Commercial Arbitration rules establishes that a claimant seeking to initiate arbitration pursuant to a contractual agreement must file two copies of a demand for arbitration and two copies of the arbitration provisions of the contract. *See* AAA Comm. Arb. R-4(a). The arbitration demands that were filed after entry of the Consent Orders demonstrate compliance with this process. The AAA Commercial Arbitration rules also permit parties to initiate an arbitration proceeding through a *submission* in which parties to "any existing dispute may commence an arbitration under these rules by filing . . . a written submission to arbitrate under these rules signed by the parties." *See* AAA Comm. Arb. R-5. There was no joint written submission signed by both parties and submitted to the AAA in this case. The parties did not commence arbitration pursuant to the submission process. On October 14, 2005 the *Owens* and *Price* Plaintiffs submitted a Consolidated and Amended Arbitration Demand that joined the substantially similar proceedings. Mr. Donald H. Green ("the Arbitrator") was selected by the parties to oversee the proceeding and acted as the sole arbitrator for the proceeding.

**B.     The Arbitration Proceedings and the Class Certification Award**

More than three years after the arbitration was consolidated, on November 12, 2008, the Plaintiffs moved for certification of the following class:

> "All customers who on or after November 15, 2000, purchased or leased from a Sonic Dealership a vehicle that included APCO ETCH product as part of the transaction whose deal file includes an arbitration agreement."

(Doc. 3 Ex. 21 10). In voluminous briefs and during three days of hearings, Petitioner opposed this Motion for Class Certification on several grounds–many similar to those presented in the instant Petition.

On April 27, 2010, the Supreme Court issued its decision in *Stolt-Nielsen S.A. et al. v. Animalfeeds International Corp*. 130 S.Ct 1758 (2010), which established a rule for evaluating consent to class arbitration from an arbitration agreement that is silent on the issue—such that the parties have come to no agreement.  *Stolt-Nielsen* widely addressed the policy objectives of the Federal Arbitration Act, and outlined general principles of law concerning class arbitration. The day the decision was issued, the arbitrator asked the parties to "provide [him] with [their] respective views as to the impact, *vel non,* of the case upon our pending arbitration." (Doc. 3 Ex. 22).

The arbitrator issued his Partial Final Award on Class Certification ("Award") on July 19, 2010. The fifty-eight page memorandum and order summarizes the arbitration proceedings, sets forth the arbitrator's view of the governing principles in the case, and conditionally certified the following class:

"All customers who, on or after November 15, 2000, purchased or leased from a Sonic dealership a vehicle with the ETCH product as a part of the transaction but not including customers who purchased or leased such vehicles from Sonic dealerships in Florida."

(Award. Doc. 3 Ex. 1 10). The contents of this award form the basis of Petitioner's case that the arbitrator exceeded his authority.

## C.    Confirmation, Vacatur, and Removal to Federal Court

Under AAA Supplementary Rule for Class Arbitration 5(d), an arbitration proceeding must be stayed for a period of at least thirty days "to permit any party to move a court of competent jurisdiction to confirm or to vacate the Class Determination Award." *See* AAA Supp. R. for Class Arbitration 5(d). The arbitrator properly stayed the award pursuant to the terms of this rule. The *Price* plaintiffs filed a motion to confirm the award in Superior Court, Lincoln County, North Carolina—the jurisdiction where the underlying suit was initially filed and from which the Consent Order to enter arbitration was issued. A hearing on the motion was scheduled by the Clerk of that court for August 23, 2010. However, on August 17, 2010, Petitioner removed the case to the U.S. District Court for the Western District of North Carolina pursuant to 28 U.S.C. § 1441 *et seq*. (Doc. No. 3:10-CV-00382). Soon after, Petitioner filed a Motion to Vacate the Arbitration Award on Class Certification in the removed *Price* action.

On the same day as *Price* was removed, Petitioner filed the instant Petition to Vacate the Arbitration Award on Class Certification for the consolidated arbitration proceedings, which include both the underlying *Owens* and *Price* suits. The Petition raises seven arguments in support of vacatur: (1) the arbitrator disregarding the operative arbitration agreements; (2) the arbitrator exceeded his powers by assuming jurisdiction over a nationwide class pursuant to an

"arbitral submission" of his own creation; (3) the arbitrator exceeded his powers and manifestly disregarded the FAA by certifying a class barred by *Stolt-Nielsen*; (4) the arbitrator exceeded his powers by assuming jurisdiction over a nationwide class pursuant to the consent orders; (5) the arbitrator exceeded his powers by certifying a class that includes persons who have never signed an arbitration agreement or who signed one which bars class arbitration; (6) the arbitrator manifestly disregarded the (Dormant) Commerce Clause and the Due Process Clause of the U.S. Constitution; (7) the arbitrator failed to make a mutual, final and definite award upon the subject matter submitted. (Doc. 1).

In resolving the matters under consideration, this Court must address two central questions: (1) whether the Petition falls within the Court's subject matter jurisdiction; and (2) whether the arbitrator exceeded his authority, providing statutory grounds for vacatur under the Federal Arbitration Act, 9 U.S.C. § 10(a)(4). This Court answers both questions in the affirmative.

**ANALYSIS**

**I.      Subject Matter Jurisdiction**

Before addressing the merits of the Petition, this Court must address the threshold matter of subject matter jurisdiction. Any case lacking this necessary predicate must be dismissed. *Steel co. v. Citizens for a Better Env't*, 523 U.S. 83, 96 (1998); *accord Jones v. American Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). Subject matter jurisdiction is both a Constitutional and statutory requirement which restricts federal judicial power to a limited set of cases and controversies. Thus, "no action of the parties can confer subject matter jurisdiction on a federal court." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982). Furthermore, the party seeking to invoke federal jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Lovern v. Edwards*, 190 F.2d 648, 654 (4th Cir. 1999). In addressing this burden, Petitioner asserts that this action is properly before the Court under either federal question subject matter jurisdiction, 28 U.S.C. § 1331, or Class Action Fairness Act ("CAFA") subject matter jurisdiction, 28 U.S.C. § 1332(d). (Doc. 1 ¶¶ 12-17). Respondent opposes each of these jurisdictional assertions.

**A.      Federal Question Subject Matter Jurisdiction for Vacatur under the Federal Arbitration Act, 9 U.S.C. §10**

Federal question subject matter jurisdiction vests when a civil action arises, "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This Petition is made pursuant to the terms of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10—a law of the United States that enables parties to petition courts for an order vacating an arbitration award. In the vast majority of cases, subject matter jurisdiction arises from the law creating the cause of

action. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)).

It is well established, however, that the FAA is "something of an anomaly in the field of federal court jurisdiction." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 25 n.32 (1983). The FAA "creates a body of federal substantive law establishing and regulating the duty to arbitration, yet it does not create any independent federal question jurisdiction." *Id.* *See also Southland Corp. v. Keating,* 465 U.S. 1, 15 n.9 (1984) ("While the [FAA] creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331 or otherwise.").

Accordingly, a petition to vacate an arbitration award does not fall within federal question subject matter jurisdiction merely by virtue of its federal statutory authorization. Rather, "there must be diversity of citizenship or some other independent basis for federal jurisdiction." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25 n.32; *accord Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1246 (D.C. Cir. 1999); *Fisher v. MBNA America Bank, N.A.*, 422 F. Supp. 2d 889 (S.D. Ohio 2006).

The FAA, in and of itself, cannot serve as the jurisdictional hook for federal question jurisdiction—the parties do not dispute this well-established point of law. (Doc. 20 6; Doc. 24 5-11). There must be an independent basis for federal jurisdiction. The present dispute concerns the nature of that independent basis. Petitioner argues that federal question subject matter jurisdiction over a petition to vacate an arbitration award is proper when *the petition itself* presents independent questions of federal law for the court's resolution. (Doc. 28 7).  To this

end, Petitioner notes that the instant Petition raises questions of federal law, namely whether the award manifestly disregards the Commerce and Due Process Clauses of the U.S. Constitution, and whether the award manifestly disregarded the FAA as interpreted in *Stolt-Nielsen*. In opposition, Respondents assert that these issues are insufficient to serve as the basis for federal question subject matter jurisdiction because, in their view of the law, a petition to vacate an arbitration award only falls within this mode of jurisdiction when the *claims underlying the arbitration* would themselves satisfy the requirements for federal question subject matter jurisdiction. (Doc. 20 7-8). In support of this position, Respondents note that the claims underlying this arbitration are derived from state law alone. In sum, the parties disagree over where and how a federal question must arise in a petition pursuant to section 10 of the FAA to invoke federal question jurisdiction.

The parties rely on many of the same authorities in support of opposing positions, and the Court will review them in turn. In *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243 (D.C. Cir. 1999), an investor engaged in arbitration proceedings with an investment firm over allegations that the firm violated the Securities Exchange Act—a body of federal law. After an adverse ruling, Kasap petitioned a federal district court to vacate the award. The court determined that the mere presence of federal claims in the underlying arbitration was insufficient to provide a jurisdictional basis for the exercise of federal question subject matter jurisdiction, and dismissed the petition.

In *Minor v. Prudential Securities, Inc.* 94 F.3d 1103 (7th Cir. 1996), the Seventh Circuit Court of Appeals made a similar conclusion of law, noting that, "[a] strong body of caselaw has

developed . . . holding that the nature of the underlying dispute is irrelevant for the purposes of subject matter jurisdiction . . . the *motion* itself must invoke diversity or federal question jurisdiction." *Id*. at 1106 (emphasis in original). Minor was an investor who made several allegations against an investment company, including federal racketeering charges. The dispute went to arbitration and after an adverse ruling from the arbitrator, Minor petitioned a federal district court to vacate the award, arguing that the arbitration process was fraudulent. *Id.* at 1104. Thus, the petition to vacate in *Minor* asked the district court to address a claim of fraud, "which is generally entrusted to state court unless the parties are diverse." *Id.* at 1106. After the district court dismissed the petition for lack of subject matter jurisdiction, the Seventh Circuit affirmed, noting that, "if Minor's *motion to vacate* somehow involved the resolution of her federal claims or some question of federal law, then . . . the district court would have jurisdiction." *Id*. (emphasis added). In other words, for the purposes of federal question subject matter jurisdiction, it was not relevant that some of the underlying claims were rooted in federal law, but it was detrimental that the motion to vacate did not involve a federal claim or question of federal law for the court to resolve. *Id.* at 1106-07 ("We simply hold that a district court has subject matter jurisdiction over a petition to vacate an arbitration award pursuant to 9 U.S.C. § 10 only where diversity of citizenship exists or the motion discloses a federal question on its face.").

The jurisdictional analyses presented in *Kasap* and *Minor* find further support in *Med-Tel Int'l Corp. v. Loulakis*, 403 F. Supp. 2d 496 (E.D. Va. 2005), in which a stockholder sought vacatur of an arbitration award on grounds that the matters submitted to arbitration were outside the scope of the pertinent arbitration agreement. The district court dismissed the petition for want

of subject matter jurisdiction, finding that the only issue presented for its review was the interpretation of the arbitration clause itself. *Id.* at 502. Because contract interpretation is traditionally a matter of state law, the court found that the petition did not present a federal question—resolution of the petition to vacate would not require the court to address questions of federal law. *Id. Accord Cole v. Long John Silver's Rests., Inc.*, 388 F. Supp. 2d 644 (D.S.C. 2005) ("Even if Respondents did base jurisdiction on Claimants' underlying FLSA claims, the Court would nonetheless conclude that jurisdiction did not exist.").

The greatest source of precedential controversy on the issue of federal question subject matter jurisdiction in this case is *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22 (2d Cir. 2000), in which the Second Circuit Court of Appeals squarely addressed "whether the district court had federal question jurisdiction over [the] motion to vacate the arbitration award." *Id.* at 25. The arbitration in *Greenberg* concerned allegations that the defendant, Bear, Stearns & Co., fraudulently engaged in short-selling stocks during an initial public offering, violating federal securities laws. After Greenberg's claims were dismissed by the arbitrators, he subsequently moved a federal court for vacatur of the arbitrators' decision on the ground that it was rendered in "manifest disregard of federal law." *Id.* In affirming the district court's determination that subject matter jurisdiction was present, the Second Circuit noted that "[w]here the arbitrators' alleged manifest disregard of federal law forms a key part of the petitioner's complaint about the award, the federal questions thereby presented are substantial enough to support federal jurisdiction," *Id.* at 27, and that "[t]he simple fact that the underlying arbitration implicated federal questions would not be enough." *Id.* at 28. This rule of law is consistent with the policy underlying federal question subject matter jurisdiction itself: "While federal claims may

appropriately be resolved through arbitration, the federal courts have a strong interest in ensuring that arbitrators interpret and apply federal law properly . . . ." *Greenberg,* 220 F.3d at 27. When a well-pleaded complaint or petition, alleges that an arbitration award was rendered in disregard of federal law, the "reviewing court [must] do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law." *Id.* "This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present." *Id. Greenberg* stands for the proposition that the "simple fact that the underlying arbitration implicated federal questions would not be enough" to provide an independent basis for federal question subject matter jurisdiction. *Id.* at 28.

Despite the above, Respondents argue that *Greenberg* supports their position that federal-question subject matter jurisdiction exists over a petition to vacate when the underlying claims present questions of federal law. (Doc. 35 2). Respondents root this argument in the final substantive sentence of the *Greenberg* court's discussion of jurisdiction: "But because the petition alleges primarily that the award was rendered in manifest disregard of the *federal laws underpinning these claims*, federal question jurisdiction is present." *Greenberg*, 220 F.3d at 28. (emphasis added). The *Greenberg* arbitration was based on federal Securities Exchange Act claims, and the petition to vacate alleged that the award was rendered in manifest disregard of the same Act. Thus, it happens that the federal law alleged to have been manifestly disregarded—and presented for the district court's review—was the same that formed the basis of the arbitration. In other words, the underlying claims in *Greenberg* and the laws allegedly violated in the petition to vacate were incidentally rooted in the same federal laws.

In the case *sub judice*, the underlying claims are rooted in state trade practices laws, and Petitioner seeks review for manifest disregard of the Commerce and Due Process clauses as well as the FAA as interpreted in *Stolt-Nielsen*. Respondent is correct that the claims underpinning the instant arbitration are not federal questions—however this is not the standard for evaluating federal question subject matter jurisdiction for a petition to vacate. Read in its totality, *Greenberg* holds that federal questions presented in the underlying arbitration are not, in and of themselves, sufficient to bring a petition to vacate within federal question subject matter jurisdiction—the petition must present questions of federal law. *Accord Carter v. Health Net of California, Inc.*, 374 F.3d 830, 836 (9th Cir. 2004) ("[I]t is not the presence of federal issues in an underlying arbitration that determines whether  federal question jurisdiction exists, but rather the grounds asserted for federal review in a well-pleaded petition.").[1]

Here, in part, Petitioner seeks vacatur based on the Arbitrator's alleged disregard of the United States Constitution, and of the substantive elements of the FAA as recently interpreted by the Supreme Court in *Stolt-Nielsen*. These grounds will require the Court to address and resolve substantial questions of federal law. Thus, the Petition provides the requisite independent basis

---

[1] Respondents also rely on *Watson v. MBNA America Bank N.A.*, No. Civ. 5:04-CV145-C, 2005 WL 1875778 (W.D.N.C. Aug. 1, 2005) to support their position that federal question subject matter jurisdiction arises in a petition to vacate only when the issues underlying the arbitration would independently support federal jurisdiction. This Court respectfully notes that the *Watson* court erroneously analyzed jurisdiction over the case using standards for a motion to compel arbitration pursuant to 9 U.S.C. § 4, rather than a motion to vacate pursuant to 9 U.S.C. § 10. *Watson* builds its analysis from *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616 (4th Cir. 1997), which concerned a motion to compel arbitration. The FAA provides specific statutory jurisdictional language for motions to compel arbitration—in short, a court issuing an order compelling arbitration must be a court of competent jurisdiction for the issues it compels into arbitration. Section 10 does not have this jurisdictional language. The Court notes that *Watson* involved a *pro se* plaintiff. Under the Fourth Circuit's policy of liberal construction for *pro se* actions, the *Watson* court was obliged to interpret the plaintiff's initial submission —which arrived in the form of a "notice to file a motion"—as a complaint. It seems highly likely that this process created confusion in determining the appropriate standard of review.

for subject matter jurisdiction under 28 U.S.C. § 1331. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25 n.32. As federal question subject matter jurisdiction is proper for several of the claims presented in support of vacatur, and because all of the claims in the Petition arise from the same set of operative facts and form part of the same case or controversy, this Court has proper jurisdiction over remaining claims pursuant to 28 U.S.C. §1367(a).[2] *See generally United Mine Workers v. Gibbs,* 383, U.S. 715 (1966).

**B.      Prudential Concerns: *Rooker-Feldman, Colorado River*, and the First-to-File Doctrines**

Respondents further argue that the Court should abstain from hearing the instant Petition, despite a finding of statutory subject matter jurisdiction, on the basis of several prudential doctrines. Respondents invoke the *Rooker-Feldman* doctrine, arguing that this Petition is effectively an impermissible appeal of a state court action. (Doc. 20 12). At its core, *Rooker-Feldman* enforces the statutory structure of the concurrent state and federal judicial systems by ensuring that federal district courts retain their character as courts of original, not appellate, jurisdiction. In *Exxon Mobil Corp. v. Saudi Basic Industries,* 544 U.S. 280 (2005), a unanimous Supreme Court extensively clarified the scope and application of *Rooker-Feldman.* The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The *Rooker-Feldman* doctrine is not applicable in the present case. First, an arbitration award is not a state-court judgment. *See Bergquist v. Mann Bracken, LLP,* 592 F.3d 816, 818 (7th Cir. 2010) (noting that "[t]he *Rooker-*

---

[2] Because subject matter jurisdiction is satisfied by the presence of federal questions in the Petition to Vacate, the Court does not reach the issue of CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d).

*Feldman* doctrine does not apply to arbitral awards"). *Exxon-Mobil* requires that the case filed in federal district court complain of injury from a state-court judgment. Second, Petitioner is not a "state-court loser." The *Price* and *Owens* actions were stayed in the state courts during the pendency of the arbitration proceedings—no judgments were issued during this time. When the Arbitrator stayed the proceedings to permit the parties to seek judicial confirmation or vacatur, Petitioner removed *Price* to federal court. This removal occurred before a state-court judgment was rendered. Consequently, no adverse judgment has been rendered against Petitioner. Respondent argues that "it does not matter that the [state court] Motion to Confirm has not yet been decided." (Doc. 20 13). It does matter. Courts do not issue decisions based on mere potentialities or hypothetical procedural postures. Rather they are bound to address the facts, law, and procedure with which they are presented. Accordingly, *Rooker-Feldman* is inapplicable to this case in its current posture.

Next, Respondents request that the Court abstain from hearing the instant petition on grounds of the *Colorado River* doctrine. As a background principle, it must be noted that federal courts have a "virtually unflagging obligation" to exercise their Constitutionally and Congressionally vested jurisdiction. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (compiling citations). The *Colorado River* doctrine acknowledges that there are limited instances in which federal courts may decline to exercise their jurisdiction when denying a federal forum would clearly serve an important countervailing interest—frequently to avoid unnecessary Constitutional decisions or to support comity among the federal and state judicial systems. The Fourth Circuit Court of Appeals offered concise direction about this doctrine in *Great American Ins. Co. v. Gross*, 468 F.3d 199 (4th Cir. 2006). The threshold question is

whether there are parallel federal and state suits. *Id.* at 207. If such a posture exists, courts must apply a six factor balancing test—giving weight toward the exercise of jurisdiction—to determine whether the doctrine should be applied.[3]  Respondents argue that the *Price* action was improperly removed to federal court and have filed a motion to remand in that case. (5:10-CV-00112 Doc. 28). Thus, they argue that there will be parallel suits on the same issue in federal and state courts. (Doc. 20 15). Respondents argument is hypothetical.  At the present time, the *Price* action sits in federal court—the suits are not in parallel. Because application of the *Colorado River* doctrine requires parallel state and federal suits as a threshold matter, this Court need not apply the balancing test.

Finally, Respondents assert that the first-to-file doctrine requires this Court to address *Price* before the instant Petition. The first-to-file doctrine prevents federal forum shopping and unnecessarily duplicative efforts in the judicial system. *See generally Learning Network, Inc.  v. Discovery Commc'ns, Inc.*, 11 F. App'x 297, 300-02 (4th Cir. 2001). "[The first-filed doctrine] typically determines, in absence of compelling circumstances, which of two concurrent federal court actions should proceed to judgment." *Smart v. Sunshine Potato Flakes, L.L.C.,* 307 F.3d 684, 687 (8th Cir. 2002). The first-to-file doctrine applies to concurrent federal litigation, thus, in determining the time when an action was commenced, the Court will look to the date of filing in federal court. Both the Petition to Vacate and the Notice of removal in *Price* were filed in this Court on August 17, 2010. The Motion to Vacate the Arbitration Award in the removed Price

---

[3]  The six-factor test examines "(1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; (6) the adequacy of the state proceeding to protect the parties rights." *Great American Ins. Co*., 468 F.3d at 207-08 (citing *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005)).

action was filed on August 23, 2010, after the filing of the Petition—which raises materially identical claims—on August 17, 2010.  Therefore, were this Court to find the first-to-file doctrine applicable, the instant Petition has temporal priority. However, the Court finds the doctrine generally inapplicable in the current posture of this case. Both the removed *Price* action and the instant petition were filed in the United States District Court for the Western District of North Carolina. Moreover, both cases were assigned to the same Judge. These facts do not fit easily with the purposes of the first-to-file doctrine. Petitioner, in filing both actions in this judicial district, is not engaging in federal forum shopping. And, because both cases sit before the same Judge, the potential for unnecessarily duplicative justice is de minimus.

Accordingly, for the reasons stated above, this Court finds that it has proper subject matter jurisdiction over the instant Petition, and that there are no prudential doctrines otherwise that support abstention from the exercise thereof.

## II.     The Petition to Vacate

This Court has been asked to enter an order vacating the decision of an independent Arbitrator. Section 10(a)(4) of the Federal Arbitration Act ("FAA") permits such an action "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Despite this express statutory authorization, a district court's "review of an arbitration panel's decision under this provision is 'substantially circumscribed.'" *Central West Virginia Energy, Inc. v. Bayer Cropscience LP*, --- F.3d --- (4th Cir. 2011) (quoting *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 857 (4th Cir. 2010)).  The Supreme Court has described the FAA as

a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). To this end, "vacatur of an arbitration award is, and must be, a rare occurrence." *Raymond James Fin. Servs, Inc. v. Bishop*, 596 F.3d 183, 184 (4th Cir. 2010).

## A.      Standard of Review

Drawn from the policy considerations stated above, the standard of review for a petition to vacate an arbitration award is "among the narrowest known to the law." *Long John Silver's Restaurants, Inc. v. Cole,* 514 F.3d 345, 349 (4th Cir. 2008). To prevail, a party seeking vacatur "must clear a high hurdle. It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct 1758, 1773 (2010). It is not the role of a reviewing court to set aside an arbitrator's decision merely because it would have adopted an alternative interpretation of the contract or would have decided the underlying issues differently. Moreover, it is well-settled that a reviewing court does "not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers v. Misco*, 484 U.S. 29, 36 (1987). The Fourth Circuit has consistently recognized that courts are entitled to "determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it." *See e.g. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). Despite this deferential standard, "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." *Matteson v. Ryder-System, Inc.*, 99 F.3d 108, 113 (3d Cir. 1996).  In sum, a court may not vacate

an arbitration decision based on the belief that the arbitrator committed serious error "as long as the arbitrator is even arguably construing or applying the *contract* and acting within the scope of his authority . . . ." *United Paperworkers*, 484 U.S. at 38. (emphasis added).

Rather, vacatur is only appropriate where the award "does not draw its essence from the [] agreement," *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 764 (1983), or where the arbitrator's interpretation of the contract is "wholly baseless and completely without reason . . . ." *Gunther v. San Diego & Arizona E. Ry.,* 382 U.S. 257, 261 (1965). In *Stolt-Nielsen*, one of several recent cases in which the Supreme Court has specifically addressed the class arbitration mechanism, Justice Alito provided federal courts with this concise direction:

> "It is only when an arbitrator *strays from interpretation and application of the agreement* and effectively dispenses his own brand of industrial justice that his decision may be unenforceable . . . In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers," for the task of an arbitrator is to interpret and enforce a contract, not to make public policy."

*Stolt-Nielsen*, 130 S.Ct at 1767. This is so because the FAA requires courts to enforce privately negotiated arbitration agreements, as they would other forms of contract, in accordance with their terms. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388, U.S. 395, 406 (1967)).

**B.      Argument Summary**

The Petition (Doc. 1) raises seven arguments in support of vacatur, ranging from the Arbitrator exceeding the scope of his contractual authority, to the Arbitrator rendering the award in violation of certain tenets of the United States Constitution. The first four of Petitioner's arguments generally address the same core issue, namely, that the arbitrator disregarded the operative arbitration agreements and exceeded his authority by treating the judicially entered Consent Orders as a self-styled "arbitral submission" which he improperly construed as the source of his power. The Court will address these four grounds concurrently.

According to Petitioner, the plain language of the Consent Orders required the Arbitrator to determine whether the "applicable arbitration clauses" precluded or allowed class-wide arbitration. Petitioner argues that despite this clear direction, the Arbitrator elected not to evaluate any of those clauses. Instead of performing this task, the Arbitrator effectively struck it from the Consent Orders, and subsequently determined, absent the requirement to evaluate the underlying arbitration clauses, that the language of the Consent Orders alone formed the ultimate source of his authority. (Doc. 38 7). Thus, Petitioner contends that the Award does not properly account for the contractual intent of the parties—a necessary predicate under the FAA. *See Stolt-Nielsen*, 130 S.Ct at 1767.  In sum, Petitioner asserts that it does not seek vacatur on the basis of mere contract misinterpretation, but because, "[i]t is axiomatic that if the arbitrator undertook to, in effect, *amend* the contract, to *substitute* his own discretion for that of the parties or to dispense of his own brand of industrial justice, the enforcement of the award must be denied." *Timken Co. v. Local Union No. 1123*, 482 F.2d 1012, 1015 n.2 (6th Cir. 1973) (emphases added); (Doc. 38 4).

In opposition to the Petition to Vacate, Respondents strongly emphasize the limited scope of judicial review and argue that Petitioner improperly asks the Court to set aside the Award because it finds that the Arbitrator misinterpreted the contract. (Doc. 24 9-13). In support of this position, Respondents argue that the Arbitrator's application of the Consent Orders was simply a permissible exercise in contract interpretation—falling outside the purview of a reviewing court. (Doc. 24 7). Respondents contend that the Arbitrator acted within the bounds of the Consent Orders because paragraph two—charging the arbitrator with the task of evaluating the *applicable* arbitration agreements—required a determination of which clauses were relevant to the arbitration proceedings. Ultimately, Respondent's opposition to the instant Petition rests on grounds that Petitioner's arguments, "[are] little more than a losing party's effort to convince this Court that the Arbitrator decided wrongly," which would not be grounds for an order to vacate the award under the standard of review described above. (Doc. 24 9).

At its core, arbitration "is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Volt*, 489 U.S. at 479. It follows that those involved in the administration of arbitration proceedings, both courts and arbitrators, must strive to, "give effect to the contractual rights and expectations of the parties." *Id.* An arbitrator is bound by the terms of the contract giving rise to the proceedings. *See Monongahela Power Co. v Local No. 2332, Int'l Brotherhood of Electrical Workers*, 566 F.2d 1196, 1198 (4th Cir. 1976). The ultimate question before the Court is whether the Arbitrator disregarded the contracts that provided the basis for the arbitration proceedings. For the following reasons, this Court concludes that he did.

## C.     The Arbitrator's Application of the Arbitration Agreements and Consent Orders

The issues underlying the arbitration concerned unique sales of ETCH to individual customers, in which many of the contracts included arbitration agreements. The Arbitrator recognized that this created a situation where there were "differing clauses in the dealer/customer contracts," and that some of these clauses contained "class bans." (Award at 13, 14). The Arbitrator further recognized that some of the contracts contained differing provisions concerning choice of law provisions, "location of the arbitration, the forum and more." *Id.* However, the Arbitrator concluded that these "individual arbitral contracts between dealers and car buyers are not the basis of this arbitration." (Award at 15).  Rather, he found that the arbitration was initiated by the Consent Orders, which he styled as an "Arbitral Submission," and found that the "contract to arbitrate here is the Arbitral Submission." (Award at 12). By treating the Consent Orders as the sole competent basis for the arbitration, the Arbitrator instantly resolved many of the complications arising from the inconsistencies in the multiple arbitration clauses, noted above. "The Arbitral Submission contains no class ban, no choice of law, refers only to the rules of the AAA (and specifically its Supplementary Rules for Class Arbitrations) as the forum for the arbitration, and is obviously identical with itself, not merely "similar" as AAA Supplementary Rule 4(a)(6) requires." (Award at 15).

It bears re-emphasizing that this arbitration was not commenced by the Submission process—despite the Arbitrator's use of the term "Arbitral Submission" to describe the contents of the Consent Orders. This arbitration was commenced pursuant to a demand for arbitration under AAA Rule 4(a), wherein parties with a pre-existing contractual agreement to arbitrate

invoke the terms of that agreement. In the arbitration submission process under AAA Rule 5, the parties elect to enter into arbitration absent a prior agreement, and in so doing are governed exclusively by the rules of the AAA. Here, the parties-plaintiff in the state court actions issued demands for arbitration invoking the individual customer contracts.

The Consent Orders certainly provide a partial basis for the arbitration proceedings— these legally enforceable documents require the parties to submit a demand to the AAA and also provide guidance to the arbitrators about their tasks. However, the Consent Orders do not provide the ultimate contractual basis for the arbitration. But for the individual arbitration agreements signed by individual ETCH purchasers there would be no grounds for Sonic's Motion to Compel arbitration from state court. These motions spurred the parties' subsequent negotiation of and agreement to the Consent Orders. In other words, Petitioner's invocation of the arbitration agreements was the catalyst for the instant arbitration.

A review of the Award demonstrates that the Arbitrator's evasive treatment of the individual arbitration clauses was informed by his concern that treating the Consent Orders as "a collective invocation of the separate, sometimes conflicting arbitration clauses in the agreements," would make the arbitration "wholly unworkable." (Award at 17). Based on this concern, the Arbitrator elected not to construe or apply the individual arbitration agreements, but to treat the Consent Orders as the full basis for his authority "so as to permit performance, not render it impossible." *Id.* In so doing, the Arbitrator was not "even arguably construing or applying the contract and acting within the scope of his authority . . . ." *United Paperworkers*, 484 U.S. at 38. This action was neither misapplication nor misinterpretation of a contract—the

Arbitrator disregarded the arbitration agreements in total. Given this, it is not possible for the award to "draw its essence from the [] agreement," *W.R. Grace & Co.,* 461 U.S. at 764.

Assuming, *arguendo*, that the Arbitrator's decision to wholly avoid applying the individual arbitration agreements and to substitute the Consent Orders as the competent font of his authority was appropriate—this Court finds that it was not—the Arbitrator's treatment of the Consent Orders themselves violates the precepts that an arbitrator "may not ignore the plain language of the contract," *United Paperworkers*, 484 U.S. at 38, and that an arbitrator "is without any authority to disregard or modify plain and unambiguous provisions" of an arbitration agreement. *Monongahela Power Co.*, 566 F.2d at 1199. In pertinent part, paragraph one of the Consent Orders requires the parties to submit "all matters claims and issues embraced by the Complaint[s]" to arbitration. Paragraph two requires the Arbitrator to determine whether the "applicable arbitration clauses" permitted class arbitration. For reasons that are unclear to this Court, the arbitrator determined that there is a "contradiction between paragraph 1 of the Submission and paragraph 2 which I must resolve." (Award at 18). In response to this perceived contradiction, the Arbitrator continued to "decide which is the *more basic or important* provision in the Submission." *Id* (emphasis added). The Arbitrator chose paragraph one, because it "broadens the scope of arbitrable issues and extends the proceedings to new parties." *Id.* Subsequently, the Arbitrator did not perform any analysis to determine the applicability of the individual agreements to arbitrate or make any determinations about whether such agreements permit or preclude class arbitration as required by paragraph two. Effectively, the arbitrator struck this paragraph from the Consent Orders—modifying the terms of the agreement. This action provides grounds for vacatur in two ways:

First, the Arbitrator's refusal to apply paragraph two constitutes an impermissible revision of the Consent Orders. When an arbitrator "amended or altered the agreement . . . he acted without authority." *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 236 (4th Cir. 2006) (vacating award). In this case, the arbitrator "undertook to, in effect, amend the contract," and to "substitute his own discretion for that of the parties." *Timken Co.*, 482 F.2d at 1015 n.2. The Court is not registering disagreement with the Arbitrator's interpretation of paragraph two, nor does it address which of the individual arbitration clauses would be applicable and whether they would permit class arbitration. The Court merely finds, and the record clearly shows, that the Arbitrator chose not to apply paragraph two. This was not his choice to make. The Supreme Court, underscoring the contractual nature of private dispute resolution, has held that parties, "are generally free to structure their arbitration agreements as they see fit." *Stolt-Nielsen*, 130 S.Ct at 1774 (quoting *Mastrobuono v. Shearson Lehmen Hutton, Inc.*, 514 U.S. 52, 57 (1995)). Yet when an arbitrator refuses to apply some contractual terms but not others, parties are forced to arbitrate pursuant to an agreement for which they did not fully bargain. *See Western Employers Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258, 259 (9th Cir. 1992) ("Because [Plaintiff] has been forced to arbitrate according to terms for which it did not fully bargain, we find that the arbitrators exceeded their powers under 9 U.S.C. §10(d) and order the district court to vacate the arbitration award.").

It bears noting that the arbitrator's decision to strike paragraph two was more than mere error in contract interpretation or a misreading of the contract. Instead, the arbitrator's decision ignored the plain language of the parties contract. *See United Paperworkers*, 484 U.S. at 38 (discussing the critical difference between an arbitrator who merely misinterprets a contract and

an arbitrator who exceeds his authority by ignoring the plain language of the contract). While the standard for vacating arbitration awards is deferential, federal courts are vested with the authority to vacate arbitration awards where arbitrators exceed their powers by ignoring unambiguous contract provisions. *Choice Hotels Int'l, Inc. v. SM Prop. Mgmt. LLC*, 519 F.3d 200, 210 (4th Cir. 2008) (affirming vacatur of award where arbitrator "disregarded unambiguous contract provisions"); *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006 (vacating award where arbitrator "disregarded the plain and unambiguous language" of an agreement, "acted in manifest disregard of the law," and revised the agreement based on his own "personal notions of right and wrong"); *U.S. Postal Serv. v. Am. Postal Workers Int'l Union*, 204 F.3d 523, 528 (4th Cir. 2000) (affirming vacatur of award where arbitrator contravened unambiguous contract language). By effectively striking paragraph two from the Consent Orders, the Arbitrator structured the arbitration agreement as he—not the parties—saw fit.

Second, the Award demonstrates that the Arbitrator's decision to strike paragraph two from the Consent Orders constitutes an improper policy choice. "The task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Stolt-Nielsen,* 130 S.Ct at 1767. A recent unpublished case from the Third Circuit provides this Court with persuasive guidance In *PMA Capital Ins. Co v. Platinum Underwriters Bermuda, Ltd.*, No. 09-3963, 2010 WL 4409655 (3d Cir. Nov. 8, 2010), the Third Circuit affirmed vacatur of an arbitration award where, *inter alia*, the arbitrators eliminated a provision in the parties contract and awarded unrequested damages. Vacatur in *PMA Capital* was appropriate because the arbitrators "rewr[ote] material terms out of the contract they purported to implement," 2010 WL 4409655 at *2, "wrote material terms of the contract out of existence," *id.* and "reinvent[ed] the contract before them" with no

authority to do so. *Id.* In failing to interpret unambiguous provisions in the contract, the arbitrators failed to do their job, making vacatur appropriate. Simply put, the arbitrators did not have the authority to make decisions about which contractual provisions to apply and which contractual provisions to ignore.

Here, in resolving the alleged contradiction in the Consent Orders, the Arbitrator purported to select the "more basic or important provision in the Submission," and chose the provision which, in his view, would broaden the scope of the issues and parties in arbitration. (Award at 18). The Arbitrator did not explicitly explain why he chose this path. Presumably, it would have been as acceptable, as a matter of mere contract interpretation, to choose the provision that might have the effect of restricting the scope of the arbitration proceedings. In explaining the decision to avoid analysis and application of the individual arbitration clauses in the dealership agreements, the Arbitrator invoked the contract doctrine "*pact sunt servanda*, that is, an agreement should be interpreted so as to permit performance, not render it impossible." (Award at 17).

The only question before the Arbitrator, however, was whether the arbitration could proceed in a class-action posture. Earlier in the Award, the Arbitrator stated his belief "that the power to enter into such a Submission as that under which this arbitration is conducted is inherent in the class action mechanism. . . ." (Award at 14). It thus appears that, to the Arbitrator, class arbitration proceedings were a foregone conclusion. *See Patten*, 441 F.3d at 236 ("Put succinctly, the arbitrator appears to have revised the . . . agreement on the basis of his own personal notions of right and wrong.") (internal quotations omitted). The Arbitrator revised the

Consent Orders to permit such a performance. Much like the arbitrators in *PMA Capital*, the arbitrator in the instant case wrote a material term out of the contract and in so doing, went beyond the scope of his authority. *PMA Capital*, 2010 WL 4409655 at *2. From the above, the Court concludes that the Arbitrator "simply imposed [his] own conception of sound policy." *Stolt-Nielsen*, 130 S.Ct at 1769. The Arbitrator's treatment of the Consent Orders demonstrates that his process strayed from interpretation and application of the agreement. In this situation, "an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers' . . . ." *Id.* at 1767.

In sum, this Court finds that the arbitrator exceeded the scope of his authority by failing to determine which of the individual arbitration agreements were applicable to the arbitration proceedings, and by revising—rather than executing—the Consent Orders. The Court does not reach whether the rule in *Stolt-Nielsen* permits or precludes class arbitration in this case, whether the individual agreements to arbitrate are sufficiently similar to allow class arbitration under the rules of the AAA, or whether the class conditionally certified by the Arbitrator was done in violation of the United States Constitution. Because the Court finds that the Arbitrator did not undertake process of evaluating the individual arbitration agreements, any such determinations would be premature.

## CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Sonic Automotive Inc.'s Petition to Vacate Arbitration Award on Class Certification (Doc. 1) is **GRANTED**, Respondents' Motion to Dismiss (Doc. 18) is **DENIED**, Respondents' Motion to Stay (Doc. 21) is **DISMISSED** as moot; and Sonic Automotive Inc.'s Motion to Enforce Stay (Doc. 50) is **DISMISSED** as moot.

Signed: August 12, 2011

Richard L. Voorhees
United States District Judge